# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### CLARKSBURG

**ROBERT ANDRE RUFF,**

    Petitioner,

v.                                                         Civil Action No.: 1:16cv196
                                                                 (Judge Keeley)

**JENNIFER SAAD, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 6, 2016, Petitioner Robert Andre Ruff ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On October 21, 2016, Petitioner paid the $5 filing fee. On October 31, 2016, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 6. On December 5, 2016, Respondent filed a response by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 12. On December 7, 2016, the Court entered an Order and Roseboro Notice [ECF No. 15], informing Petitioner of his right and obligation to respond to the Government's motion. On December 27, 2016, Petitioner filed his Response. ECF No. 19. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II. BACKGROUND

In 1983, the United States District Court for the Middle District of Pennsylvania sentenced Petitioner to life in prison for kidnapping, conspiracy to kidnap, and interstate transportation of a stolen vehicle. ECF No. 13-1 at 7. In 1995, the Superior Court for the District of Columbia also sentenced Petitioner to life in prison for murder, armed robbery and carrying a pistol without a license. ECF No. 13-1 at 8.

On August 6, 2015, while Petitioner was incarcerated at FCI Elkton, he received an incident report charging him with fighting with a fellow inmate. The report gave the following description of the incident:

> On August 6, 2015, I reviewed CCTV footage for a possible fight in the CB unit. CCTV footage revealed inmates [ ] and RUFF, Robert Andre, Reg. No. 03804-067, were involved in a physical altercation at 10:04 a.m. on August 6, 2015, in Cube 30 of the CB Unit. Unit team were able to identify both inmates. Specifically, inmate [ ] was seen entering the unit at approximately 10:04:15 a.m., then inmate Ruff enters, wearing a hat and gloves, at 10:04:45 a.m. and immediately both inmates are seen exchanging punches and grappling. Inmate Ruff leaves the cube at 10:05:26 a.m. and Officer Cox escorts inmate [ ] out of the cube at 10:06:30 a.m.

ECF No. 13-1 at 11. The staff member then charged Petitioner with fighting with another person in violation of the Bureau of Prisons' ("BOP's") Prohibited Act Code § 201. Id.

That same day, a copy of the Incident Report was provided to Petitioner. Id. A BOP Lieutenant was assigned to investigate the charges. Id. at 12. During the investigation, the BOP Lieutenant interviewed Petitioner after informing him that he had the right to remain silent. Id. Petitioner stated he did not have a comment. Id. After interviewing Petitioner, the BOP Lieutenant concluded that Petitioner did commit the prohibited act and was properly charged, The incident report was then forwarded to the

2

United Disciplinary Committee ("UDC"), and a note was entered that Petitioner would remain in the Special Housing Unit ("SHU"). Id.

Petitioner informed the UDC that he "had problems with Dude for a long time. He kept antagonizing me." ECF No. 13-1 at 11. The UDC concluded that it could not impose appropriate sanctions for a 200 level incident report and referred the matter to the Disciplinary Hearing Officer with a recommendation that Petitioner be placed in disciplinary segregation and lose good conduct time. Id.

On August 13, 2015, Petitioner received notice of a disciplinary hearing before the disciplinary hearing officer ("DHO"). ECF No. 13-1 at 14. After acknowledging that he was entitled to have a full-time staff member represent him at the hearing, Petitioner indicated that he did not wish to have a staff representative. Id. However, he indicated that he wished to call witnesses. Id. Petitioner also acknowledged that he had been advised of his rights regarding the DHO hearing. ECF No. 13-1 at 16. On September 11, 2015, the DHO held Petitioner's disciplinary hearing. Id. at 18. Ultimately, the DHO found that Petitioner was guilty of the act as charged, and sanctioned him with the loss of 37 day Good Conduct Time, 30 days of disciplinary segregation and 180 days loss of visitation. Id. at 21.

The Hearing Report was completed on October 16, 2015, and a copy was provided to Petitioner that same day. ECF No. 13-1 at 21. The DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. at 23. Specifically, the DHO stated that he had relied upon, *inter alia*, the Incident Report and the witness's testimony and that of Petitioner, as well as photographs and medical assessments depicting Petitioner's physical status and that of the other inmate as a result of their

interaction/fighting. In addition, the DHO reviewed the CCTV Video footage. Id. The report also included the reasons for Petitioner's sanctions. Id. To illustrate, the report provided that:

> The action/behavior on the part of Fighting with another person, threatens the health, safety, and welfare of not only himself, but of all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate that he will be held responsible for his action/behaviors at all times.
>
> The sanction involving Disciplinary Segregation was taken to deter any further negative behavior, and to enforce a standard of inmates being held responsible for their actions.
>
> The sanctions imposed involving Disallowance of Good Conduct Time, and Loss of Privileges-Visit, were also taken to enforce a standard of inmates being held responsible for their actions. Past evidence has supported that this type of behavior can be disruptive to the Security or Orderly Running of a BOP Facility, and ABSOLUTELY will not be tolerated.
>
> Also, the DHO considered the seriousness of your disruptive behavior, when determining your sanctions imposed for this current infraction. You should be aware: this type of behavior will absolutely not be tolerated. Furthermore, You should be aware any future CONTINUED disruptive behavior, will be cause for the DHO to impose significant progressive sanctions in accordance with P.S. 5270. 09, Page 55, Progressive Sanctioning Chart, in an effort to express the importance, of abiding by ALL institution rules, and regulations.
>
> Your disruptive behavior indicates a blatant disregard to institution/BOP rules and regulations. This causes a significant security concern, to the orderly running of the institution. This type of behavior will absolutely not be tolerated.
>
> The DHO expects the sanctions will serve to deter you from similar misconduct in the future and convince you to abide by all institution rules and regulations.

ECF No. 13-1 at 21 (emphasis in original).

On June 24, 2016, Petitioner filed a regional appeal of the DHO report. The appeal was rejected and returned to Petitioner because he did not provide of copy of the DHO report he wished to appeal or identify the charges and date of the DHO action. In addition, the appeal was rejected as being untimely because it was not received within 20 days of the receipt of the DHO report. Petitioner was advised to provide a memo from staff for the untimely filing. ECF No. 1-2 at 1. Petitioner filed an appeal with the central office on July 22, 2016. The central office appeal was rejected and returned to Petitioner for the same reasons as the regional appeal. Petitioner was advised that "[i]f staff provide a memo stating the late filing was not your fault, the[n] re-submit to the level of the original rejection. ECF No. 1-2 at 2. The undersigned notes that in his appeal to the central office, Petitioner indicated that he never received the DHO report from FCI Elkton. ECF No. 1-2 at 3.

### III  **PLEADINGS**

A.  **The Petition**

Petitioner asserts a violation of his Fifth and Sixth Amendment rights to due process have been violated and have resulted in an additional 27 days imprisonment. In addition, Petitioner asserts that this due process violation, and the erroneous incident report at issue in this matter, caused him to be denied parole.[1] Petitioner specifically alleges that he never was provided a written copy of the DHO report and was therefore denied his right to appeal or use the administrative remedy process and has been hindered in his ability to appeal the specific incident facts to this Court. Petitioner

---

[1] Petitioner specifically alleges that "this Due Process violation led to my being mis-represented at my latest parole hearing when the erroneous incident alleged by the BOP caused me to be denied parole according to the Parole Officer." ECF No. 1 at 5. However, Petitioner not only provides no date for the alleged parole hearing, but he also has not provided the decision by the parole board.

requests that the Court order the BOP to: (1) expunge the DHO findings, record and sanctions; (2) restore the good time days taken from him; (3) correct his security level and return him to a low security facility; (4) recommend the Parole Board hold another parole hearing because he was misrepresented at his last hearing; and (5) receive no retribution. ECF No. 1-1 at 4.

**B.     Respondent's Motion to Dismiss or for Summary Judgment**

Respondent advances the following arguments in response to the petition:

1. BOP records contradict Petitioner's assertion that he never received the DHO Report and because his claims rely on baseless factual allegations, this Court is empowered to dismiss his petition.

2. Even if this Court expunges the underlying incident report and restores Petitioner's good conduct time, the indefinite duration of his life sentence would not necessarily be reduced, and therefore his claim is not cognizable in a 2241 petition because he is not challenging the fact or duration of his sentence.

3. Petitioner's assertion that the BOP violated its own internal disciplinary and administrative review policies misconstrues these policies and is not cognizable in a habeas petition.

4. Petitioner cannot utilize a habeas petition to challenge the fact that he was assigned to disciplinary segregation and lost visitation privileges.

5. Petitioner cannot utilize a habeas petition to circumvent the BOP's discretion with respect to his security classification.

6. Petitioner requests other relief, such as asking the Court to direct the BOP

from further discipline and to conduct another parole hearing, which is not available in a habeas petition.

7. Even if Petitioner had pled a cognizable habeas claim, his petition lacks merit because he received all due process protections available to an inmate facing discipline and the DHO's findings were supported by adequate evidence.

**C.    Petitioner's Rebuttal**

In reply to Respondent's Motion to Dismiss or for summary Judgment, Petitioner reiterates that he never received the DHO report to which he was entitled and was, therefore, denied his due process rights because he was prevented from appealing his disciplinary sanctions. In addition, Petitioner alleges that had he been allowed to appeal, evidence would have been introduced showing that he was forced to defend himself and was not, in fact, fighting nor was he the aggressor. Petitioner also maintains that he was denied his due process because the DHO report is to be delivered within 30 days of the hearing. Therefore, the alleged delivery on October 16, 2015, was untimely, and any effort to deliver a duplicate report to him on November 10, 2016[2], was for outside the time limitation period and was after the administrative remedy process had already begun.

Petitioner also argues that he did not receive all the due process protections to which he was entitled with respect to discipline proceedings. In particular, he continues to assert that he did not receive a copy of the DHO report and was prevented from appealing the DHO report through the grievance process. In addition, he argues that the DHO was not an impartial fact finder because he is a "BOP staff member, who

---

[2] After Petition initiated this case, his case manager at FCI Gilmer, Christy Wagner, attempted to provide him with a copy of the DHO report. However, Petitioner refused to accept a copy or sign the acknowledgement of receipt. ECF No. 13-2

socializes, takes breaks, eats lunch, and attends the same BOP staff festivities, and receives BOP bonuses as all BOP staff. All BOP staff are trained to protect each other, to cover for each other, to not believe inmates, who are considered to be liars by BOP staff." ECF No. 19 at 5.

## IV. STANDARD OF REVIEW

### 1. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a

8

formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. **DISCUSSION**

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. See McCling v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004). Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." Id.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving **written notification** of the disciplinary action. See 28 C.F.R. § 542.14(d)(2) (emphasis added). If unsatisfied with that response, the petitioner may file

an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to correct the defect and resubmit, the inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.17(c). The Central Office may affirm the rejection, may direct the submission be accepted at the lower level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).

Here, it would appear that Petitioner technically did not exhaust his administrative grievance because they were rejected as being untimely and for failing to attach a copy of the DHO report.[3] However, in the "interest of expediency," Respondent is not asserting the Petitioner failed to exhaust his administrative grievance of his disciplinary hearing. ECF No. 13 at 5. Accordingly, the undersigned has reviewed the merits of the petition.

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

---
[3] Discussion regarding receipt of the DHO report can be found in footnote 2, infra.

11

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required of disciplinary proceedings. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's disciplinary hearing was held on September 11, 2015, and he was provided with his Incident Report on August 6, 2015. Therefore, Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearings, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions.[4] Third, Petitioner was afforded the opportunity to call witnesses on his own behalf and to present a defense during the hearing. Fourth, Petitioner was instructed of and declined his right to a staff

---

[4] The undersigned recognizes that Petitioner argues vehemently that he did not receive a copy of the DHO report and points to the fact that his signature does not appear on the report. However, the report contains no place for the inmate's signature [ECF No. 13-1 at 21], unlike the Notice of Discipline Hearing [ECF No. 13-1 at 14] and the notification of Inmate Rights at Discipline Hearing. ECF No. 13-1 at 16. Furthermore, although PS 5270.09 does provide that the DHO gives the inmate a written copy of the report, it ordinarily is **provided within 15 work days of the decision**, not within 30 days of the hearing as alleged by Petitioner. ECF No. 13-3 at 16. Furthermore, the Code of Federal Regulations contains no time limit on delivery of the report. See 28 C.F.R. § 541.8(h). In the instant case, the weight of the evidence establishes that the DHO report was provided to Petitioner on October 16, 2015, the same date it was completed [ECF No. 13-1 at 21], and 11 days before he was transferred from FCI Lisbon to FCI Gilmer. ECF No. 13-1 at 2.

representative during the hearing. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b).

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457. In this case, the DHO found Petitioner had committed the act of fighting with another inmate, in violation of Prohibited Act Code § 201. Because the photographs and medical assessments of Petitioner and Inmate [ ] demonstrated that each had sustained minor injuries consistent with being involved in a fight, the video CCTV footage depicted Petitioner and Inmate [ ] punching, pushing/shoving each other, engaged in mutual combat with one another, and Petitioner was positively identified as one of two inmates fighting in the CCTV footage, the undersigned finds that the DHO's decision is supported by some evidence.

Finally, the undersigned notes that a petition for habeas corpus relief allows a federal inmate to seek "immediate release or a speedier release from" confinement. Presier v. Rodriquez, 411 U.S. 475, 498 (1973). Therefore, a § 2241 claim only permits a petitioner to assert a liberty interest. In the instant case, Petitioner argues that he was deprived of due process when he was unable to appeal the DHO decision because he was not given a copy of the report, and he challenges the sanctions imposed. However,

13

it is clear that Petitioner's challenge to being assigned to disciplinary segregation and loss of visitation privileges do not assert a liberty interest.

Furthermore, Petitioner is serving two life sentences. His life sentences from the Middle District of Pennsylvania and the District of Columbia were aggregated for the purpose of computing his sentence. ECF No. 13-1 at 3. In addition, the BOP has traditionally applied general federal law and sentencing calculation guidelines to inmates, like Petitioner, who violated a D.C. criminal law before June 22, 1993. Id. More specifically, the BOP awards these inmates Extra Good Time ("EGT") in accordance with general BOP policies and federal law as previously contained in 18 U.S.C. § 4162, which has since been repealed. ECF No. 13-1 at 27-39.

An inmate has an established due process liberty interest where good conduct credits are used to reduce the length of his sentence. Wolff, 418 U.S. at 557. That liberty interest cannot be revoked without certain due process protections. Id. However, an inmate has no due process liberty interest in good conduct credits that are used for a purposes other than reducing the length of his sentence. Waddell v. Dep't of Correction, 680 F.3d 384, 395 (4th Cir. 2012). The BOP cannot use Extra Good Time like Petitioner has earned to reduce a life sentence because a life sentence is inherently indefinite and provides no fixed term or projected release date from which to deduct good time credits. Id. at 394-95. Furthermore, the fact that Petitioner's good time credits may potentially impact a future parole eligibility determination does not give rise to a due process interest. Id. at 394-95. Therefore, Petitioner has not asserted a cognizable liberty interest as required by § 2241.

**RECOMMENDATION**

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 12] be **GRANTED**, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATE: June 1, 2017

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE